UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER STRONG,

        Plaintiff,

v.

UNKNOWN SANDBORN et al.,

        Defendants.
_____/

Case No. 1:24-cv-507

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Defendants Unknown Parties #1 and #2 for failure to state a claim. The Court will also dismiss Plaintiff's official capacity claims against Defendants Sandborn and Unknown Parties. Plaintiff's Eighth Amendment personal capacity claims against Defendants Sandborn and Unknown Parties remain in the case.

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events of which he complains occurred, however, at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the following ICF personnel in their official and personal capacities: Unknown Warden, referred to as Unknown Party #2; Assistant Resident Unit Manager Unknown Sandborn; Unknown Party #1, referred to as John Doe, 1st Shift Command; and Unknown Parties, referred to as multiple unknown correctional officers.

Plaintiff alleges that as of December 15, 2022, he was in segregation at ICF. (Compl., ECF No. 1, PageID.6.) Plaintiff learned that the COVID-19 virus had "surfac[ed] in other units." (*Id.*, PageID.7.) Plaintiff asked Defendant Sandborn as well as unnamed sergeants why officers and other personnel were not wearing personal protective equipment (PPE) when they made rounds. (*Id.*) Plaintiff was told that they would "see what [they could] do." (*Id.*)

During that week, Plaintiff sent numerous kites to Defendants Sandborn, Unknown Party #1, and Unknown Party #2, informing them that multiple correctional officers and other individuals (Defendant Unknown Parties) had been going cell to cell and passing out meal trays without wearing PPE. (*Id.*, PageID.7–8.) Plaintiff also indicated that these individuals were handcuffing and escorting inmates, including Plaintiff, to the showers without wearing PPE. (*Id.*)

Shortly thereafter, an unknown inmate in a different unit tested positive for COVID-19. (*Id.*) Plaintiff alleges that the inmate was removed from the other unit and placed in Plaintiff's unit, a few cells away from Plaintiff. (*Id.*) The other inmate told Plaintiff and others that he was positive for COVID-19. (*Id.*) Plaintiff asked an unknown correctional officer if a COVID-positive inmate had just been placed a few cells away from him, and the officer confirmed that the other inmate

had. (*Id.*, PageID.9.) The officer noted that the other inmate was the only COVID-positive inmate on that unit. (*Id.*)

Plaintiff began to "ask and beg[]" Defendants Unknown Parties to remove the COVID-positive inmate from the unit. (*Id.*) Plaintiff's requests "fell on dea[f] ears." (*Id.*) Plaintiff also sent kites to Defendants Sandborn, Unknown Party #1, and Unknown Party #2, asking that either he or the COVID-positive inmate be removed from the unit. (*Id.*, PageID.9–10.) Plaintiff's kites went unanswered. (*Id.*, PageID.10.)

After Plaintiff submitted these kites, Defendant Unknown Parties placed 3 or 4 more inmates who had tested positive for COVID-19 in Plaintiff's unit, just a few cells away from Plaintiff. (*Id.*) Plaintiff continued to send kites and complain about these issues. (*Id.*) At one point, Plaintiff stopped Defendant Sandborn and asked to be moved out of the unit. (*Id.*) Defendant Sandborn responded, "We have nowhere else to place you, [we're] full." (*Id.*)

A few days before December 29, 2022, Plaintiff began to experience aches and pains in his body and chest. (*Id.*, PageID.11.) Plaintiff alleges that he had severe headaches and other symptoms associated with COVID-19. (*Id.*) On December 29, 2022, Plaintiff stopped a non-party nurse and complained about his pain. (*Id.*) Plaintiff ultimately tested positive for COVID-19. (*Id.*)

Based upon the foregoing, Plaintiff asserts Eighth Amendment deliberate indifference claims against Defendants. (*Id.*, PageID.12–14.) As relief, Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.15.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Official Capacity Claims

As set forth above, Plaintiff sues Defendants in their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity

intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks only damages. (Compl., ECF No. 1, PageID.15.) Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's official capacity claims against Defendants in their entirety.

  **B. Personal Capacity Claims**

Plaintiff contends that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, Petitioner alleges that Defendants subjected him to

conditions that put him at risk of contracting COVID-19, and that he ultimately contracted the virus.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the

6

subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Objective Prong

In a 2020 case brought by federal prisoners under 28 U.S.C. § 2241, the United States Court of Appeals for the Sixth Circuit addressed the issue of whether the Bureau of Prisons (BOP) violated the Eighth Amendment rights of medically vulnerable inmates at the Elkton Federal Correctional Institution by failing to adequately protect them from COVID-19 infection. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). In the opinion, the Sixth Circuit found that the plaintiffs in *Wilson* had easily satisfied the objective component of an Eighth Amendment claim:

> The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death. The BOP acknowledges that "[t]he health risks posed by COVID-19 are significant." CA6 R. 35, Appellant Br., PageID 42. The infection and fatality rates at Elkton have borne out the serious risk of COVID-19, despite the BOP's efforts. The transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death. Petitioners have put forth sufficient evidence that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

*Id.* at 840.

Per *Wilson*, the Sixth Circuit has determined that a plaintiff may satisfy the objective prong by alleging conditions that could facilitate COVID-19 transmission and health risks posed by the virus, certainly at least with respect to medically vulnerable inmates. Plaintiff does not allege that he is medically vulnerable, but he does allege that he contracted COVID-19 while incarcerated at ICF. The Court therefore assumes, without deciding, that Plaintiff has satisfied the objective prong of the deliberate indifference test.

## 2. Subjective Prong

### a. Defendants Unknown Party #1 and Unknown Party #2

Throughout his complaint, Plaintiff contends that he sent numerous kites to Defendants Unknown Party #1 and Unknown Party #2 regarding the placement of COVID-19 positive prisoners a few cells away from Plaintiff, as well as the fact that staff members were not wearing PPE when passing out meal trays and escorting inmates to the showers. It appears that Plaintiff has named these individuals as Defendants because of their supervisory positions as shift commander and warden, respectively.

Government officials, such as Defendants Unknown Party #1 and Unknown Party #2, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Plaintiff must plead facts to demonstrate that each named defendant was "personally involved" in the unconstitutional action. *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)).

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*[ *v. Luttrell*], 199 F.3d [295,] 300 [6th Cir. 1999)] (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum,"

> the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any *facts* showing that Defendants Unknown Party #1 and Unknown Party #2 were aware that employees were not wearing PPE while interacting with inmates. Nor does Plaintiff allege any *facts* showing that these individuals knew that inmates who had tested positive for COVID-19 were being placed in Plaintiff's unit in cells close by to Plaintiff. Although Plaintiff vaguely states that Defendants Unknown Party #1 and Unknown Party #2 knew that COVID-positive inmates were being placed in Plaintiff's unit, he sets forth no *facts* to support this conclusory allegation. Plaintiff, at most, faults Defendants Unknown Party #1 and Unknown Party #2 for not responding to his kites concerning the issue. That is not sufficient to show that these individuals engaged in active unconstitutional behavior.

While the Court is sympathetic to the challenges that Plaintiff and other prisoners have faced while incarcerated during the COVID-19 pandemic, Plaintiff must plead enough factual content to permit the Court to draw a reasonable inference that Defendants Unknown Party #1 and Unknown Party #2 were deliberately indifferent to the risk of COVID-19 transmission and, therefore, violated the Eighth Amendment. *See Iqbal*, 556 U.S. at 679. Plaintiff has not done so here. Plaintiff's Eighth Amendment claims against Defendants Unknown Party #1 and Unknown Party #2 will, therefore, be dismissed.

### b.    Defendants Sandborn and Unknown Parties

With respect to Defendant Sandborn, Plaintiff alleges that he wrote kites regarding his COVID-19 concerns that went unanswered. Plaintiff further alleges that at one point, he spoke to Defendant Sandborn about his concerns and asked to be moved from the unit because the COVID-positive prisoners; Defendant Sandborn responded that there was nowhere for Plaintiff to move. As for Defendant Unknown Parties, Plaintiff contends that they were the ones responsible for placing inmates who had tested positive for COVID-19 in Plaintiff's unit, only a few cells away from Plaintiff. Plaintiff also alleges that Defendant Unknown Parties did not wear PPE when handling meal trays and when escorting inmates to the showers, even after COVID-positive prisoners were placed in Plaintiff's unit. Although Plaintiff has by no means proven deliberate indifference, taking his allegations as true and in the light most favorable to him, the Court concludes that his Eighth Amendment personal capacity claims against Defendants Sandborn and Unknown Parties may not be dismissed on initial review.

### **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Defendants Unknown Parties #1 and #2 will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against Defendants Sandborn and Unknown Parties. Plaintiff's Eighth Amendment personal capacity claims against Defendants Sandborn and Unknown Parties remain in the case.

An order consistent with this opinion will be entered.

Dated:  May 31, 2024                                  /s/ Paul L. Maloney
                                                                         Paul L. Maloney
                                                                         United States District Judge