UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER STRONG,

        Plaintiff,

v.

UNKNOWN SANDBORN, *et al.*,

        Defendants.
_____/

Case No. 1:24-cv-507

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Christopher Strong, a prisoner in the custody of the Michigan Department of Corrections (MDOC). The incident occurred at the MDOC's Ionia Correctional Facility (ICF). The only remaining defendant is Assistant Resident Unit Manager (ARUM) Patrick Sanborn (named as "Unknown Sandborn"). This matter is now before the Court on defendant's Motion for summary judgment on the basis of exhaustion (ECF No. 23). Plaintiff did not oppose the motion.

    **I.**    **Background**

The Court summarized the relevant allegations as follows:

Plaintiff alleges that as of December 15, 2022, he was in segregation at ICF. (Compl., ECF No. 1, PageID.6.) Plaintiff learned that the COVID-19 virus had "surfac[ed] in other units." (*Id.*, PageID.7.) Plaintiff asked Defendant Sandborn as well as unnamed sergeants why officers and other personnel were not wearing personal protective equipment (PPE) when they made rounds. (*Id.*) Plaintiff was told that they would "see what [they could] do." (*Id.*)

During that week, Plaintiff sent numerous kites to Defendants Sandborn, Unknown Party #1, and Unknown Party #2, informing them that multiple correctional officers and other individuals (Defendant Unknown Parties) had been going cell to cell and passing out meal trays without wearing PPE. (*Id.*, PageID.7-

1

8.) Plaintiff also indicated that these individuals were handcuffing and escorting inmates, including Plaintiff, to the showers without wearing PPE. (*Id.*)

Shortly thereafter, an unknown inmate in a different unit tested positive for COVID-19. (*Id.*) Plaintiff alleges that the inmate was removed from the other unit and placed in Plaintiff's unit, a few cells away from Plaintiff. (*Id.*) The other inmate told Plaintiff and others that he was positive for COVID-19. (*Id.*) Plaintiff asked an unknown correctional officer if a COVID-positive inmate had just been placed a few cells away from him, and the officer confirmed that the other inmate had. (*Id.*, PageID.9.) The officer noted that the other inmate was the only COVID-positive inmate on that unit. (*Id.*)

Plaintiff began to "ask and beg[]" Defendants Unknown Parties to remove the COVID-positive inmate from the unit. (*Id.*) Plaintiff's requests "fell on dea[f] ears." (*Id.*) Plaintiff also sent kites to Defendants Sandborn, Unknown Party #1, and Unknown Party #2, asking that either he or the COVID-positive inmate be removed from the unit. (*Id.*, PageID.9-10.) Plaintiff's kites went unanswered. (*Id.*, PageID.10.)

After Plaintiff submitted these kites, Defendant Unknown Parties placed 3 or 4 more inmates who had tested positive for COVID-19 in Plaintiff's unit, just a few cells away from Plaintiff. (*Id.*) Plaintiff continued to send kites and complain about these issues. (*Id.*) At one point, Plaintiff stopped Defendant Sandborn and asked to be moved out of the unit. (*Id.*) Defendant Sandborn responded, "We have nowhere else to place you, [we're] full." (*Id.*)

A few days before December 29, 2022, Plaintiff began to experience aches and pains in his body and chest. (*Id.*, PageID.11.) Plaintiff alleges that he had severe headaches and other symptoms associated with COVID-19. (*Id.*) On December 29, 2022, Plaintiff stopped a non-party nurse and complained about his pain. (*Id.*) Plaintiff ultimately tested positive for COVID-19. (*Id.*)

Based upon the foregoing, Plaintiff asserts Eighth Amendment deliberate indifference claims against Defendants. (*Id.*, PageID.12–14.) As relief, Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.15.)

Opinion (ECF No. 6, PageID.36-37).

## II.    Summary Judgment

### A.    Legal standard

Defendant Sanborn has moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Plaintiff did not file a responsive brief as required by W.D. Mich. LCivR 7.2(c) ("any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials"). "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot

3

"blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

### B.  Lack of Exhaustion

#### 1.  Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

4

## 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

## 3. Discussion

There is no evidence that plaintiff exhausted a grievance before filing this lawsuit. In this regard, defendants pointed out that "before Strong filed his complaint, he had not pursued through Step III any grievances which he filed at Step I on or after December 15, 2022. (Ex. 2.)". Defendant's Brief (ECF No. 24, PageID.97). Plaintiff's citation of "Ex. 2" refers to plaintiff's MDOC Prisoner Step III Grievance Report (ECF No. 24-3, PageID.114-116). The only grievance which plaintiff pursued through Step III, Grievance ICF-22-12-1419-28B, was received by the

MDOC on December 13, 2022, two days *before* the alleged series of incidents began on December 15, 2022.[1]  Based on this record, plaintiff did not properly exhaust a grievance to support his claims against defendant ARUM Sanborn.  *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  Accordingly, Sanborn's motion for summary judgment should be granted.

### III.    Recommendation

For these reasons, I respectfully recommend that defendant Sanborn's motion for summary judgment on the basis of exhaustion (ECF No. 23) be **GRANTED** and that this case be **terminated**.

Dated:  July 9, 2025                                              /s/ Ray Kent
                                                                              RAY KENT
                                                                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[1] The Court notes that plaintiff attempted to excuse exhaustion, alleging in the complaint that "[t]he grievance process was not available [sic] to the plaintiff due to threats & acts of violance [sic] on the plaintiff if he filed grievance [sic]".  Compl. at PageID.12.  Plaintiff added a "verification' to the complaint, presumably so that it could serve as supporting material for a response to a motion for summary judgment. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir.1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment).  However, the verification is not in the form required by statute.  *See* 28 U.S.C. § 1746(2) ("I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)").  Rather, plaintiff altered the statutory form stating that it was true and correct "to the best of my knowledge and belief." Compl. at PageID.16 (emphasis added).  Summary judgment cannot be granted on facts based upon a person's "belief."  *See Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) ("statements made on belief or on information and belief, cannot be utilized on a summary-judgment motion") (internal quotation marks omitted).  Furthermore, there is not evidence that plaintiff was prevented from filing grievances.  As discussed, plaintiff filed a grievance on December 13, 2022, only a few days before the alleged incidents.